UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

DAWN A. CARTER,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

    Defendant.

NO. C17-5184-JPD

ORDER

Plaintiff Dawn A. Carter appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") that denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court REVERSES the Commissioner's decision and REMANDS this matter for additional administrative proceedings.

    I.    FACTS AND PROCEDURAL HISTORY

Plaintiff is a 47-year-old woman with a 10th-grade education (including special education). Administrative Record ("AR") at 250. Her past work experience includes employment as a fast-food server/cleaner/dishwasher/cook and grocery stocker. AR at 43,

ORDER - 1

250. Plaintiff was last gainfully employed in July 2013. AR at 250.

In September 2013, Plaintiff applied for SSI and DIB, alleging an onset date of July 4, 2013. AR at 221-29. Plaintiff asserts that she is disabled due to post-traumatic stress disorder ("PTSD"), asthma, arthritis, anxiety, and depression. AR at 249.

The Commissioner denied Plaintiff's claims initially and on reconsideration. AR at 142-45, 147-57. Plaintiff requested a hearing, which took place on March 16, 2015. AR at 34-81. On August 28, 2015, the ALJ issued a decision finding Plaintiff not disabled and denied benefits, finding that Plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 14-28. After reviewing additional evidence, the Appeals Council denied Plaintiff's request for review. AR at 1-7. On March 14, 2017, Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 1, 3.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a

ORDER - 2

whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Ms. Carter bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

ORDER - 3

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On August 28, 2015, the ALJ found:

1. The claimant meets the insured status requirements of the Act through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since July 4, 2013, the alleged onset date.

3. The claimant's affective disorder, anxiety disorder, migraines, and morbid obesity were severe impairments.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. The claimant has the RFC to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). The claimant can lift 20 pounds occasionally and 10 pounds frequently. She can stand/walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday. She can frequently stoop, kneel, crouch, crawl, and climb ramps and stairs. She can occasionally climb ladders, ropes, and scaffolds. She must avoid concentrated exposure to extreme cold, extreme heat, vibrations, noise, fumes, odors, dusts, gases, and hazards. The claimant can perform simple, routine tasks and detailed tasks, but would have difficulty performing complex tasks consistently. She can have superficial contact with the public in that she can be around the public and interact with them briefly, but she should not do any customer service or sales jobs. She can work in proximity to co-workers and interact briefly, but would do better in solitary work tasks. Her work settings should be routine and predictable and only require occasional adaption to changes.

6. The claimant is unable to perform any past relevant work.

7. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform.

8. The claimant has not been under a disability, as defined in the Act, from July 4, 2013, through the date of the decision.

AR at 16-28.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ erred in identifying Plaintiff's severe impairments at step two;

2. Whether the ALJ erred in assessing the medical opinion evidence; and

3. Whether the ALJ erred in discounting Plaintiff's subjective testimony.

Dkt. 12 at 1.

## VII. DISCUSSION

A. <u>The ALJ erred at step two.</u>

Plaintiff argues that the ALJ erred in finding several impairments not severe, specifically PTSD, panic disorder, agoraphobia, edema, carpal tunnel syndrome ("CTS"), and osteoarthritis. Dkt. 12 at 11.

1. *Legal standards*

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.922(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985)).

"[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id.* (citing *Bowen*, 482 U.S. at 153-54). An ALJ is also required to consider the "combined effect" of an individual's impairments in considering severity. *Id.* A diagnosis alone is not sufficient to establish a severe impairment. Instead, a claimant must show his medically determinable impairments are severe, and must have lasted or been expected to last at least twelve months. 20 C.F.R. §§ 404.1505, 404.1509, 404.1521, 416.921.

   2.   *Edema*

Plaintiff points to several treatment notes that refer to her edema, as well as her testimony that she has to elevate her legs "pretty much all of the time" due to swelling. Dkt. 12 at 11 (citing AR at 53, 607, 676, 679, 682, 685, 690, 706, 710). The ALJ discussed edema at step two, and asserted that restricting Plaintiff to less than the full range of light work "addresses any limitations from her edema." AR at 17. The ALJ also noted that Plaintiff's provider opined that her edema was caused by her obesity, which the ALJ did find to be a severe impairment. AR at 16-17 (citing AR at 708).

Plaintiff argues that limiting her to standing or walking for six hours a day does not fully accommodate her edema (Dkt. 14 at 5), but cites no objective evidence to support this argument. Furthermore, the treatment notes indicate that Plaintiff began new treatment for her edema two months after the administrative hearing, and medication had resolved her edema in the past. AR at 706-12. Accordingly, the ALJ did not err in failing to include edema as a severe impairment at step two.

   3.   *CTS*

Plaintiff was diagnosed with CTS in July 2013. AR at 440-42. Her treatment provider recommended that she use a wrist brace at night for 4-6 weeks and return to the clinic if the condition did not improve. AR at 442.

ORDER - 7

The ALJ noted that Plaintiff had been diagnosed with CTS, but found that this condition was not severe because she was treated only once for this condition. AR at 17. The ALJ also noted that the State agency consultant opined in April 2014 that Plaintiff had limitations caused by her CTS, but the ALJ rejected those as inconsistent with Plaintiff's lack of treatment history for this condition. AR at 26.

The ALJ's assessment of the CTS evidence is supported by substantial evidence. The scant evidence of Plaintiff's treatment for CTS does not establish that the condition caused significant limitations for a twelve-month period. Thus, the ALJ did not err in finding Plaintiff's CTS to be not severe.

4. *Osteoarthritis*

The ALJ summarized Plaintiff's treatment for osteoarthritis, and asserted that restricting her to less than the full range of light work accounts for the limitations caused by this condition. AR at 17. Plaintiff argues that her osteoarthritis symptoms are inconsistent with an ability to stand or walk for six hours a day, but cites no evidence supporting this conclusion. Dkt. 12 at 14. Plaintiff does point to her prescription for a four-wheeled walker and her reports of falling (AR at 738), but the prescribing nurse specifically noted that she had no significant physical impairments that would cause her to fall. *See* AR at 739. Plaintiff's use of a walker does not support her argument that her osteoarthritis was severe, and she has not shown that the ALJ erred in finding that it was not severe and/or accommodated in the RFC assessment.

5. *Agoraphobia*

The ALJ found Plaintiff's agoraphobia to be not severe in light of evidence that she can leave her home to attend church, participate in treatment, and shop for groceries. AR at 17. Plaintiff argues that this finding is erroneous because the activities cited by the ALJ do not

ORDER - 8

pertain to her functioning in a workplace setting. Dkt. 12 at 12-13. Plaintiff cites no portion of the record establishing the existence of workplace limitations caused by her agoraphobia, neither examining psychologist diagnosed her with agoraphobia. *See* AR at 331, 695-96. Accordingly, Plaintiff has not shown error in the ALJ's exclusion of agoraphobia at step two.

     5.    *PTSD and panic disorder*

Plaintiff argues that the ALJ erred in failing to include PTSD and panic disorder at step two, and that the ALJ erred in suggesting that the conditions of "affective disorder" and "anxiety disorder" encompass the symptoms diagnosed as various disorders because that suggestion assumes that all mental illnesses cause the same limitations. Dkt. 14 at 6.

The ALJ's overgeneralization belies the specific PTSD diagnoses asserted by acceptable medical sources, and fails to address Plaintiff's panic- and trauma-related symptoms and treatment. These symptoms are not necessarily cumulative of symptoms caused by her affective and anxiety disorders, and the ALJ shall therefore reconsider Plaintiff's PTSD and panic disorder diagnoses at step two on remand.[2]

B.   <u>The ALJ erred in discounting Plaintiff's subjective statements.</u>

The ALJ provided several reasons to discount Plaintiff's subjective statements: (1) her activities were inconsistent with her alleged physical and mental limitations; (2) she used a walker even though she had no physical impairments, and her treatment notes did not corroborate the frequent falls that she described at the hearing; (3) her descriptions of past sexual abuse were inconsistent; (4) her explanations as to why she stopped working were

---

[2] Although Plaintiff requests that the ALJ's errors be remedied by a remand for a finding of disability, she has not shown that the requirements for such relief are present. *See* Dkt. 12 at 18. In light of the conflicts in the record, the Court finds that additional proceedings would be useful. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) ("Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate.").

ORDER - 9

inconsistent; and (5) the recent timing of her PTSD diagnosis based on past abuse was inconsistent with her reports of an extensive abuse history, as well as her ability to work despite that history for many years. AR at 23-24. Plaintiff argues that the ALJ's assessment of her subjective testimony is erroneous, and the Court will address the ALJ's reasons in turn.

1. *Legal standards*

As noted above, it is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.[3] *Burrell v. Colvin* 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing

---

[3] In SSR 16-3p, the Social Security Administration rescinded SSR 96-7p, eliminated the term "credibility" from its sub-regulatory policy, clarified that "subjective symptom evaluation is not an examination of an individual's character[,]" and indicated it would more "more closely follow [its] regulatory language regarding symptom evaluation." SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). However, this change is effective March 28, 2016, and not applicable to the 2015 ALJ decision in this case. *See* 2016 WL 1237954 (Mar. 24, 2016). The Court, moreover, continues to cite to relevant case law utilizing the term credibility.

ORDER - 10

*Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Thomas*, 278 F.3d at 958-59 (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

2.  *Many of the ALJ's reasons are unconvincing*

The ALJ described various activities that she asserted were inconsistent with Plaintiff's alleged mental and physical limitations. AR at 23-24. Plaintiff specifically challenges the ALJ's reliance on evidence of her church attendance and ability to host houseguests, which the ALJ posited was inconsistent with her alleged difficulty being around other people. Dkt. 12 at 15. The Court finds this rationale to be unpersuasive, because Plaintiff did not allege difficulty being around familiar people or in her own home.

The ALJ also found that Plaintiff had inconsistently reported the type of her prior sexual assaults, the perpetrators of those assaults, and the dates of the assaults. AR at 24. Plaintiff contends that her reports were consistent (Dkt. 12 at 16), and the Court agrees. Nothing about the reports cited by the ALJ was inconsistent, and this reason is therefore erroneous.

The ALJ noted that Plaintiff was not diagnosed with PTSD until after she quit a job and sought DSHS benefits. AR at 24. The ALJ found that Plaintiff's ability to work despite her

ORDER - 11

history of abuse demonstrates that her PTSD would not preclude work. *Id.* Plaintiff contends that her PTSD symptoms may have flared at the time she sought DSHS benefits, and that it is her combination of impairments that leaves her disabled, not PTSD alone. Dkt. 12 at 17.

Although an ALJ does not err in considering whether a claimant has been able to work in the past with the same impairments he or she claims are disabling, Plaintiff correctly notes that she alleges disability based on her combination of impairments, and not only PTSD. Thus, the fact that Plaintiff worked in spite of her trauma history does not undermine the allegation of disability in this case, nor does Plaintiff's delayed diagnosis/treatment for PTSD.

These errors in the ALJ's analysis of Plaintiff's subjective testimony require a reconsideration of her statements on remand, because the errors infect the ALJ's reasoning throughout the decision. On remand, the ALJ shall either credit Plaintiff's statements, or provide legally sufficient reasons to discount them.

C. <u>The ALJ erred in assessing the medical opinion evidence.</u>

Plaintiff assigns error to the ALJ's assessment of opinions written by examining psychologists Keith Krueger, Ph.D., and Daniel Neims, Psy.D., and treating nurse Heather Latham, ARNP. Plaintiff also argues that the ALJ erred in assessing the State agency psychological consultant opinions. The Court will address each disputed opinion in turn.

    1.    *Legal standards*

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss*, 427 F.3d at 1216.

ORDER - 12

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. SSR 96-6p, 1996 WL 374180, at *2 (Jul. 2, 1996). Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1513(d). Such testimony regarding a claimant's symptoms or how an impairment affects his/her ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). This is particularly true for such non-acceptable medical sources as nurses and medical assistants. *See* SSR 06-03p, 2006 WL 2263437 (noting that because such persons "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," their opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file"). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill*, 12 F.3d at 919.

2. *Dr. Krueger*

Dr. Krueger performed an examination and completed a DSHS form opinion in May 2015. AR at 694-705. Dr. Krueger diagnosed PTSD and found that Plaintiff had several

ORDER - 13

moderate, marked, and severe limitations in her ability to perform basic work activities. AR at 696. Dr. Krueger noted that Plaintiff's test results showed her to be "[f]airly marginal on [mental status examination] items looking at executive function. OK on PartA of [trail making test], but got confused in alphabet on PartB, stuck for around 30 sec at 1 point, even when given gentle prompting." AR at 695.

The ALJ summarized Dr. Krueger's opinion and gave it little weight, because it was "predominantly based on the claimant's subjective reports, which are not entirely credible for the reasons noted above." AR at 25. The ALJ stated that Dr. Krueger

> conducted very little objective testing of the claimant and appeared to rely on her reports of things like phobias or paranoia for his opinion. The claimant did have some difficulty with Trails Making, but this may be related to her learning difficulty and dyslexia rather than PTSD or depression. The claimant is limited to no complex tasks, which addresses this limitation.

*Id.*

Some of Dr. Krueger's opinion is undoubtedly based on Plaintiff's subjective self-report, as revealed by his direct quotes of Plaintiff's statements as well as his reliance on her description of symptoms not observed during the examination. AR at 694-95. The ALJ erred in discounting Plaintiff's self-report, and that error precludes a rejection of Dr. Krueger's opinion on that basis. And in any event, Dr. Krueger did perform some objective testing, as even the ALJ acknowledged, and many of his objective findings were not within normal limits. AR at 698-705. Accordingly, the Court finds that the ALJ's characterization of Dr. Krueger's opinion as based on "very little objective testing" is not a legitimate reason to discount his opinion.

Furthermore, the ALJ's interpretation of Dr. Krueger's trailmaking test results is not based on substantial evidence in the record: Dr. Krueger did not diagnose Plaintiff with a

ORDER - 14

learning difficulty or dyslexia, nor did he attribute her test results to those conditions. Thus, the ALJ's finding is purely speculative, and outside her area of expertise.

Because the ALJ's assessment of Dr. Krueger's opinion is erroneous, the ALJ shall reconsider it on remand and either credit it, or provide specific, legitimate reasons to discount it.

3. *Dr. Neims*

Dr. Neims examined Plaintiff and completed a DSHS form opinion in July 2013. AR at 328-46. He opined that Plaintiff had mild or moderate limitations in her ability to complete basic work activities. AR at 332.

The ALJ discounted Dr. Neims's opinion because he relied on Plaintiff's self-report. AR at 24. The ALJ also cited many normal objective findings that did not corroborate his conclusions. *Id.*

As noted by Plaintiff, the ALJ overlooked many abnormal objective findings, which contradict both of the ALJ's reasons to discount Dr. Neims's opinion. Although Dr. Neims did rely to some extent on Plaintiff's self-report (and did not necessarily err in doing so, as the ALJ erred in discounting that self-report), he also documented objective testing, some of which revealed results not within normal limits. AR at 337-39. The ALJ's reasons to discount Dr. Neims's opinion do not accurately reflect the totality of Dr. Neims's opinion, and are not legitimate. On remand, the ALJ shall reconsider Dr. Neims's opinion and either credit it or provide specific, legitimate reasons to discount it.

4. *State agency consultants*

The ALJ summarized the opinions of the State agency reviewing psychologists, and found that treatment Plaintiff underwent subsequent to the State agency review indicated that she had additional limitations. AR at 25-26. The ALJ also discounted the State agency

opinions as vague and failing to "provide function limitations that could be included in a[n] [RFC]." AR at 26.

Plaintiff argues that the State agency opinions "support a finding of disability" (Dkt. 12 at 9), but this argument overlooks that the State agency consultants themselves indicated that Plaintiff was not disabled. *See* AR at 95, 124. Plaintiff's other challenges to the ALJ's assessment of the State agency opinions appear to be connected to her arguments regarding Dr. Neims's opinion. Dkt. 12 at 9-10. Because the Court agrees with Plaintiff that the ALJ must reassess Dr. Neims's opinion for the reasons explained *supra*, the ALJ shall reconsider the State agency opinions to the extent necessary on remand.

5. *Ms. Latham*

Ms. Latham opined that Plaintiff was not capable of returning to work "given her psychiatric status and developmental delays[,]" and that "caring for herself and her health problems it the most she can do." AR at 492.

The ALJ discounted Ms. Latham's opinion for several reasons. First, the ALJ noted that Ms. Latham did not assess any specific functional limitations or objective findings, and appeared to rely on Plaintiff's self-report. AR at 25. The ALJ also noted that despite Plaintiff's developmental delays, she was able to work for many years and retained the ability to live independently, shop, attend appointments and church, and manage her medications. *Id*. Finally, the ALJ noted that although Ms. Latham specifically found that Plaintiff had no significant physical problems, she nonetheless prescribed a walker. AR at 25 (referencing AR at 737-39).

In light of the Court's finding that the ALJ erred in discounting Plaintiff's self-report and subjective testimony, the ALJ's assessment of Ms. Latham's opinion also requires reconsideration on remand.

## VIII. CONCLUSION

For the foregoing reasons, the Court REVERSES and REMANDS this case to the Commissioner for further proceedings not inconsistent with the Court's instructions.

DATED this 18th day of September, 2017.

JAMES P. DONOHUE
United States Magistrate Judge

ORDER - 17